## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in
this Volume.

——————  —————— ——————, CHIEF JUSTICE.[1]
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. SAMUEL McGOWAN,  "        "

## JACKSON v. LEWIS.

1. VOLUNTARY DEED—CONSIDERATION.—Where a debtor, by a deed which
purports to be voluntary, transfers a lot of land to her infant son to
whom she is then largely indebted, but there is no evidence to show
that the payment of such indebtedness was the real consideration, the
deed will be set aside at the suit and for the benefit of other then ex-
isting creditors, who have since reduced their claims to judgment.

2. VOLUNTARY DEED—FRAUD.—A voluntary deed is fraudulent by opera-
tion of law, where the event shows that existing creditors are thereby
prejudiced, without regard to whether there was any actual or moral
fraud in the conveyance.

---

[1] Hon. William D. Simpson, Chief Justice, died December 26, 1890, after
the hearing of some of the cases reported in this volume, but before any of
the opinions were filed. Under the constitution, this vacancy can be filled
only by the legislature.—REPORTER.

3. PURCHASE WITH TRUST FUNDS—EVIDENCE.—It cannot be held that a lot of land was paid for with trust money then in the hands of the purchaser, when the deed, prepared by learned counsel, does not so state and there is no evidence so to show.

Before WALLACE, J., Richland, April, 1890.

This was a suit by C. F. Jackson and Thomas Agnew, as executors of John Agnew, deceased, against N. E. Lewis. The Circuit decree was as follows:

This case has been twice tried on Circuit, and on appeal to the Supreme Court taken in each instance the Circuit decisions dismissing the complaint have been reversed, and the case remanded to the Circuit Court for a new trial. 29 S. C., 193; 32 S. C., 593. At this trial, in addition to the testimony taken at the former trials, there were put in evidence by the defendant Lewis certain receipts showing such payments by D. B. Lewis, executor of R. N. Lewis, to Emily Bateman, afterwards Cooper, on account of the legacy bequeathed her and her son, the defendant Lewis, by R. N. Lewis, as left a balance due thereon of $1,279.-58, November 29, 1870; also a receipt by R. M. Wallace, collector of internal revenue, for $165.00 paid for succession tax on said legacy by Mrs. Lewis, executrix of D. B. Lewis; also an obligation signed by B. I. Boone, agent of S. B. Lewis, executrix of D. B. Lewis, August 5th, 1871, agreeing, in consideration of Emily Bateman forbearing to demand the balance of the said legacy in cash, to pay said Emily the balance of said legacy on January 1, 1872, with interest at one per cent. per month from the date thereof.

The Supreme Court held (29 S. C., 199): "That to sustain the conclusion reached by the Circuit Judge at the first trial, it was necessary for the defendant Lewis to show: 1st. That his half of the legacy under the third clause of the will of R. N. Lewis had been paid to his mother, whereby she became indebted to him in that amount. 2nd. That in consideration of his releasing her from such indebtedness, the deed in question was executed." The only additional testimony on the first, and indeed on any point, was that above mentioned, which satisfied me of the payment of the legacy to the amount stated. There was no additional testi-

mony to that already passed on by the Supreme Court. as to the second point, or that the deed in question was "made in satisfaction of any indebtedness from Emily to her son." 29 S. C., 200. This being the status of the case, there has not been sufficient testimony adduced to establish the fact that the deed for the lot in question, on its face voluntary, was based on a valuable consideration; and it is therefore, as to the debt of John Agnew, contracted before its execution, fraudulent and void. It is therefore ordered, adjudged, and decreed:

1. That the conveyance by Emily Cooper (formerly Emily Bateman) to Nicholas Eugene Lewis, February 16, 1876, of all that lot, piece, or parcel of land. lying and being situate in the County of Richland, city of Columbia, State of South Carolina, bounded north by Lewis Levy's lot, east by lot of the estate of R. N. Lewis, south by Washington street, and west by G. G. Newton's lot; the said lot being in shape of a rectangular parallelogram, measuring 108 feet, more or less, north and south, and 61 feet, more or less, east and west; together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging and appertaining, is, and is hereby declared to be, as to the judgment of John Agnew, deceased, against said Emily Cooper, entered in the Court of Common Pleas of the said county and State, June 5, 1878. for the seven hundred dollars and twenty-one cents, with interest from April 15, 1878, with twenty-three dollars and ninety cents costs. fraudulent, null, and void.

2. It is further ordered, adjudged, and decreed, that unless the said judgment and costs be paid in full by the 9th day of June, 1890, that the master for the said county do, after advertisement thereof, sell and convey the said premises at public outcry at Columbia, on the salesday in July next, or some salesday thereafter, to the highest bidder, for cash enough to pay the costs of the proceedings herein, and the amount of the judgment in favor of John Agnew and the costs thereon; the balance on credit of one and two years, to be secured by a bond and mortgage of the premises.

3. That from the proceeds of said sale the said master do pay, first, the costs of these proceedings and then to the plaintiffs or

their attorneys of record herein the sum of the said judgment in favor of John Agnew and the costs thereon, and that he do hold the balance subject to the order of this court.

4. That the costs of the proceedings herein be taxed by the master, and the plaintiffs have leave to issue execution therefor.

Defendant appealed on the following exceptions:

1. That his honor, Judge Wallace, notwithstanding it was proven to his satisfaction that Emily Cooper had received her son's share of the legacy and thereby became indebted to him in this amount, decreed that, in addition thereto, it was necessary for Lewis to prove that it was in consideration of his releasing her from this debt that the deed in question was made.

2. That it being proved that Emily Cooper had received the whole legacy under the 3rd clause of R. N. Lewis's will, and had not paid her son anything, except to convey to him the lot of land in question, the judge should have concluded without any further proof that the deed was a payment by Emily to her son of his part of the legacy, and therefore the deed was neither voluntary nor fraudulent.

3. That the Circuit Judge was evidently trammelled by the opinion of the Supreme Court, which opinion was rendered under a different phase of the case, and not applicable to the case at the trial before him. Now, the defendant, Lewis, excepts to Judge Wallace's determining that it was necessary for him to prove not only: 1st. That the mother got the legacy; but, 2nd, that it was in consideration of the son releasing her from such indebtedness that the deed in question was executed.

4. That the decree is unjust and inequitable, because it insists that because an *infant did not execute a release* (when unable to do so), therefore a deed executed by a mother to pay this infant a legacy she had collected, was voluntary and fraudulent.

5. Because, as the consideration of the deed has been fully proved, the deed should have been sustained against Emily's creditors, because the money with which the property was purchased was a trust fund, and the equities of the defendant are higher than those of the creditors of Emily Cooper.

6. Because the plaintiffs in this action were not deceived;

Agnew and Smith both knew Emily had no money except the $5.000 she received from Lewis, and that one-half of this sum belonged to Lewis's child by Emily.

*Mr. F. W. McMaster*, for appellant.

*Messrs. Buchman & Youmans*, contra.

January 6, 1891.    The opinion of the court was delivered by

MR. JUSTICE MCIVER.    Inasmuch as this is the third appeal in this case, it will not be necessary to make any detailed statement of the facts, as they may be found in the reports of the former appeals in 29 S. C., 193, and 32 S. C., 593, the latter being more fully reported in 10 S. E. Rep., 1074.    It seems. to us that, in view of the former decisions in this case, the decree of Judge Wallace, which should be incorporated in the report of this case, is quite sufficient to vindicate the judgment now appealed from.

But as the case has been most earnestly argued by counsel for appellant, we will proceed to consider again the real question in the case. Here is a deed, voluntary upon its face, executed after the debt was contracted, to which the effort is to subject the property conveyed by that deed, and the burden is upon the appellant to show that although the deed appears to be a voluntary conveyance, yet in fact it was based upon a valuable consideration.    It is not pretended that any money or other valuable consideration was paid to the grantor at the time the deed was executed, but the contention is that the real consideration was the payment of a debt due by the grantor to the grantee—that the grantor had received a certain legacy under the will of one Lewis, in which the grantor and grantee were entitled to share in equal proportions, and in this way the grantor became indebted to the grantee in the sum of one-half of said legacy.    To sustain such contention it was manifestly necessary, as this court heretofore held, that the appellant should show, 1st. That the grantor had received such legacy, and thereby became indebted to the grantee to the amount of one-half thereof.    2nd. That the conveyance in question, though voluntary on its face, was in fact made in payment of such indebtedness.

Certainly the mere fact that the grantor was indebted to the grantee, would not by itself be sufficient to convert an apparently voluntary deed into a deed based upon a valuable consideration; for that would imply that a debtor could not make a gift to his creditor—an implication clearly unwarrantable. While, therefore, even if it should be conceded that the evidence given at the last trial was sufficient to show that the legacy in question was paid to the grantor, although the Circuit Judge found as matter of fact that a considerable portion was unpaid, and that thereby an indebtedness arose from the grantor to the grantee, yet we look in vain for any evidence whatsoever showing that the deed in question was made in payment or satisfaction of such indebtedness; and this has been twice before in this case held essential to make out the defence set up by the appellant. Suppose that the appellant, after attaining his majority, had instituted proceedings against his mother to account for his portion of the legacy which had been received by her, and she had set up as a defence that she had paid him his share by conveying to him by this deed, voluntary upon its face, the lot which it is now sought to subject to the payment of the debt due the plaintiffs as executors; is it not perfectly certain that some evidence would have been required showing that though the deed was apparently voluntary, yet in fact it was made as payment or satisfaction of the appellant's portion of the legacy? So here it is equally certain that when an effort is made to exempt from liability property which a debtor had conveyed to another by a deed voluntary upon its face, it must be shown that such deed was in fact based upon a valuable consideration, and the mere fact that the grantor was indebted to the grantee is not sufficient to convert an apparently voluntary deed into one based upon a valuable consideration.

Counsel for appellant has argued this case as if it were necessary, in order to subject the lot here in question to the payment of plaintiffs' debt, that there should have been some actual fraud in making the deed from Emily Bateman, or Cooper, to the appellant, in which the latter must have participated. This is a total misapprehension. A voluntary deed may be set aside at the instance of an existing creditor upon the ground of constructive or legal fraud, even where there is

not the slightest taint of actual or moral fraud in the transaction, under the principle that the law requires that one must be just before he is generous. The law will not permit one who is indebted at the time to give his property away, provided such gift proves prejudicial to the interest of existing creditors. The motive which prompts the donor to make the gift is wholly immaterial. If the donor is indebted at the time, and the event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed for the purpose of paying such indebtedness, the voluntary conveyance will be set aside and the property subjected to the payment of such indebtedness, upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was free from any trace of moral fraud. While, therefore, it is neither charged nor proved that there was any actual or moral fraud in this transaction between mother and son, on the part of either of them, yet as it does conclusively appear that the mother was indebted at the time she made this apparently voluntary deed, and as the event has proved that it is necessary to resort to the property conveyed by such deed, in order to secure the payment of such indebtedness, the only question in the case, as was said by Judge Norton in the outset, is whether this deed of Emily Cooper to her son was voluntary; and as it so appears upon its face, the burden of proof was upon the appellant to show that this was a mistake, and that in fact there was a valuable consideration for the conveyance. Having failed to show this, the result necessarily follows that the deed must be set aside and the property embraced in it subjected to the payment of the plaintiffs' debt.

Counsel for appellant, in one of his grounds of appeal and in his argument here, has made another point which, so far as we can discover, was neither made nor considered at the last or any former hearing of this case in the Circuit Court; and this would be sufficient to exclude it from any consideration here. But waiving this, we will *ex gratia* consider the point, which is, that the property embraced in the deed from Emily Cooper to her son, the present appellant, having been bought by her with trust funds, of which he was the beneficiary, became

affected with the trust, and his equity is superior to that of the creditors now seeking to subject it to the payment of their debt. This position rests upon an assumption of fact which is not warranted by the testimony in the case. Certainly no such fact has been found in the court below, and, as we have intimated, we do not think the testimony would have warranted any such finding. It appears from the testimony, as gathered from the "Case" as prepared for the hearing of the first appeal, to which we are permitted to refer by one of the amendments to the "Case" as prepared for the present hearing, that the lot in question was conveyed to Emily Bateman (afterwards Cooper) by the executor of Robert N. Lewis under a power of sale conferred by the will of the latter, on the 14th day of April, 1870, in consideration of the sum of twenty-six hundred and fifty dollars, then acknowledged to have been paid. This deed is in the ordinary form (omitting the warranty clause), and there is not a word in it indicating that the consideration was paid in trust funds, or was for the benefit of any one but the grantee named therein. But on the same day another deed for another lot, prepared by the same attorney, was made by the executor of Robert N. Lewis to "Emily Bateman, for herself and in trust for her son, Eugene N. Lewis," &c. Although the consideration mentioned in the first of these deeds appears to have been cash then paid, yet the testimony of Col. McMaster, who drew these deeds, and was then the attorney for the estate of Lewis, shows that no money passed, and that the consideration was paid by receipt of Emily Bateman for so much on account of the legacy ; and one of the receipts offered in evidence at the last trial in the Circuit Court, bearing even date with the deed, is for very nearly, though not precisely, the same amount as the consideration stated in the deed—one being for $2,678, while the other is $2,650.

This is the only evidence tending to show that the lot in question was bought with trust funds belonging to appellant, and giving to it the fullest force, we do not think it is sufficient, especially in view of other circumstances which will be presently mentioned, to establish the fact upon which the point now under consideration rests. The most that it shows is that the lot was bought by Emily Bateman with her half of the legacy, as the

consideration amounts to what would probably be her half and the interest thereon. We cannot assume that any portion of her son's share of the legacy was invested in this lot; for to do this we should be compelled to assume that she had committed a breach of trust by receiving payment of a pecuniary legacy in land at a very high price, as the testimony shows, while her own share was received in money, as was intended by the testator. But in addition to this, it is scarcely conceivable that counsel of such high character, intelligence, and large experience, fully cognizant of all the circumstances, would on the same day draw two deeds, both intended for the benefit of the son, and while careful to so draw one of these deeds as to show clearly its intention, should draw the other in such a way as to show clearly that it was intended solely for the benefit of the mother, without the slightest reference to, or intimation of, any intention to secure a benefit to the son.

It seems to us, therefore, that the necessary foundation in fact for the position contended for by appellant being absent, it is unnecessary to weigh the comparative equities of the grantee under a deed voluntary upon its face, with those of creditors of the grantor, who held this property under an absolute deed spread upon the records for about six years, during which period the debt now held by the plaintiffs was contracted, which amounted to an invitation to all persons to credit her upon the faith of this property.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.